UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TENNESSEE
AT CHATTANOOGA

| | |
|---|---|
| JAMES A. BARNETT, | ) |
| | ) |
|    *Plaintiff*, | ) |
| v. | )    No. 1:06-cv-235 |
| | )    *Edgar/Lee* |
| LENDA CLARK;[1] KEN COX; | ) |
| DEPUTY SILER; SHERIFF BILLY LONG; | ) |
| JIM HART, CHIEF OF CORRECTIONS; | ) |
| HAMILTON DISTRICT ATTORNEY BILL | ) |
| COX; | ) |
| | ) |
|    *Defendant*. | ) |

### MEMORANDUM

Plaintiff James A. Barnett ("Barnett"), an inmate, presently housed at CCA Silverdale, in Chattanooga, Tennessee, has filed this pro se complaint pursuant to 42 U.S.C. § 1983. Barnett alleges Lt. Lenda Clark ("Lt. Clark"), Officer Ken Cox ("Officer Cox"), Deputy Siler ("Deputy Siler"), Sheriff Billy Long ("Sheriff Long"), Jim Hart, Chief of Corrections at Hamilton County Jail ("Chief Hart"), and Hamilton County Assistant District Attorney Bill Cox ("District Attorney Cox") are responsible for his alleged illegal extradition. Specifically, Barnett asserts the defendants violated his constitutional rights when they allegedly proceeded in absence of a signed Governor's extradition warrant, wavier of extradition rights, or habeas hearing. Thus, Barnett argues he is entitled to damages for injuries associated with the constitutional and statutory procedural violations.

---

[1] Some of the documents plaintiff submitted and counsel for defendant Lenda Clark, spell this defendant's name, Lenda. However, the clerk's office and defense counsel for District Attorney Cox spelled her name as Linda. Accordingly, counsel for defendant Lenda Clark is **DIRECTED** to notify the Court of the correct spelling of this defendant's name within **thirty days** from the date of this Order.

1

Barnett claims that on September 18, 2006, Officers Cox and Siler arrived at Scott State Prison in Hardwick, Georgia without an extradition warrant or proper waiver of extradition from him for the purpose of taking custody of him and bringing him to Tennessee for prosecution. Barnett claims Officer Cox telephoned Lt. Clark about the problem and he told Barnett that Lt. Clark ordered him to take custody of Barnett because she was not going to waste a four to five hour trip and Barnett could just sue her. Officer Cox then cuffed and shackled Barnett and Officer Siler transported him to Tennessee (Court File No. 2).

Presently before the Court are several non-dispositive motions and a motion to dismiss by District Attorney Cox. The Court will dispose of the non-dispositive motions before rendering a decision on the motion to dismiss. However, the Court will first address plaintiff's miscellaneous documents.

I.     **Miscellaneous Documents**

Presently before the Court are two letters (Court File Nos. 48 & 49)[2] and a request for documents (Court File No. 50) filed by plaintiff. Such writings are an improper communication with the Court which is not permitted. Furthermore, plaintiff cannot expect the Court to take action based

---

[2] To the extent that document number 49 is a motion to enforce plaintiff's right to speedy trial in the state criminal court, this Court must abstain from interfering with the state court criminal proceedings. Moreover, this is not the appropriate vehicle through which to raise these claims. It would be more appropriate for plaintiff to raise these claims in a pretrial habeas petition under 28 U.S.C. § 2241 after he exhausts the claim in the state courts. *See Barker v. Wingo*, 407 U.S. 514, 530 (1972)( identifies four factors that courts should consider in determining whether a defendant has been denied a speedy trial in violation of the Sixth Amendment); *Atkins v. People of State of Mich.*, 644 F.2d 543, 546 (6th Cir. 1981 ("On occasion federal courts have, prior to trial, issued writs of habeas corpus ordering a prompt trial"), *cert. denied*, 452 U.S. 964 (1981). To the extent plaintiff is dissatisfied with his counsel, this is a matter for the state trial court to address and not the federal court.

on his writing a letter to the Court without filing a proper motion and serving the pleading or motion on the opposing party.

If plaintiff intends to file an amendment to his complaint, he should file a motion to amend and clearly designate any amended complaint as such. If the plaintiff intends to ask the Court to take action and grant him some form of relief, it is necessary, at a minimum, that he file a proper motion with the Court clearly stating the relevant facts and law and making a specific demand for the precise relief he seeks. Any and all such motions must also be served by the plaintiff upon the opposing parties.

Accordingly, any further letters addressed to Judges of this district court will not be filed but will be returned to plaintiff for failure to comply with the Federal Rules of Civil Procedure.

Also before the Court is plaintiff's request for documents addressed to District Attorney Cox (Court File No. 50). To the extent plaintiff filed this document as a motion to compel, it is **DENIED** as District Attorney Cox is being dismissed from this case (Court File No. 50).

## II. Nondispositive Motions

Presently before the Court are plaintiff's motions to appoint counsel, for an emergency hearing, and compel discovery (Court File No. 35); to clarify allegations against defendants (Court File No. 39); for default judgment (Court File No. 42); and leave to amend complaint (Court File No. 44). Also before the Court are defendant District Attorney Cox's motions to dismiss (Court File No. 26), which the Court previously reserved ruling upon (Court Rule No. 34), and his motion to stay discovery (Court file No. 38). The Court will address plaintiff's motions before addressing the motions of defendant District Attorney Cox.

### A. Motion to Appoint Counsel, for an Emergency Hearing, and Compel Discovery

Plaintiff has essentially filed three motions in one. The Court will address each request separately and for the reasons explained below, the motion will be denied (Court File No. 35).

#### 1. Motion to Appoint Counsel

This is plaintiff's third motion requesting counsel. Plaintiff has previously filed two motions for appointment of counsel, both of which were denied (Court File Nos. 4 & 12). Plaintiff's third motion for appointment of counsel is **DENIED** for the reasons explained in the Court's previous Order denying his initial request for counsel to be appointed (Court File No. 5). At this time the Court does not find any exceptional circumstances exist which requires the appointment of counsel. Accordingly, plaintiff's motion for appointment of counsel is **DENIED** (Court File No. 35).

#### 2. Motion for an Emergency Hearing

Plaintiff's motion requesting an emergency hearing is his second motion requesting such a hearing. Plaintiff is claiming he is illegally being detained in defendant's custody and has been for approximately six months. Plaintiff is claiming that he should be released because defendants violated the Interstate Detainer Act procedures when they extradited him to Tennessee (Court File No. 35). The record does not contain proof of the authority under which the State of Tennessee obtained custody of plaintiff, thus the record does not demonstrate that plaintiff is being illegally detained. Moreover, it does not appear that procedural defects in obtaining custody of plaintiff impairs Tennessee's power to prosecute plaintiff for underlying criminal charges.

The Supreme Court has previously concluded that the jurisdiction of a trial court over a criminal defendant is not vitiated by the violation of extradition procedures. *Lascelles v. Georgia*, 148 U.S. 537, 542, 544 (1893) ("Neither the constitution nor the act of congress providing for the

rendition of fugitives upon proper requisition being made confers, either expressly or by implication, any right or privilege upon such fugitives, under and by virtue of which they can assert, in the state to which they are returned, exemption from trial for any criminal act done therein....The jurisdiction of the court in which the indictment is found is not impaired by the manner in which the accused is brought before it.").

In the case of extradition, once a fugitive has been brought within the custody of the demanding state, it appears the legality of extradition is no longer an available legal argument. "Once the fugitive is returned to the demanding state, the right to challenge extradition becomes moot: the fugitive is no longer being detained by the asylum state, and so, the legality of his or her detention there is no longer at issue." *Barton v. Norrod*, 106 F.3d 1289, 1298 (6th Cir.), *cert. denied*, 522 U.S. 934 (1997). Thus, regardless of the fact that plaintiff was allegedly extradited in violation of his federally protected rights, it does not appear that he is entitled to relief from prosecution due to the alleged violation of the extradition procedures. *See United States v.* Walker, 255 F.3d 540, 542 (8th Cir. 2001) (generally, dismissal of an indictment is not an appropriate remedy for violations of IAD), *cert. denied*, 535 U.S. 1011 (2002); *Remeta v. Singletary*, 85 F.3d 513, 518-19 (11th Cir. 1996) (sending states' alleged denial of a pre-transfer hearing did not deprive receiving state of jurisdiction to try petitioner for murder), *cert. denied*, 520 U.S. 1147 (1997); *Shack v Attorney General of Pa.,* 776 F.2d 1170, 1172-73 (3rd Cir. 1985) (sending state's failure to provide pre-transfer hearing did not impair receiving state's power to try prisoner, hence his subsequent confinement did not violate due process and was not cognizable in habeas proceeding), *cert. denied*,

475 U.S. 1030 (1986). Consequently, plaintiff has not demonstrated that an emergency hearing is

5

required.

### 3. Motion to Compel Discovery

Plaintiff also requests the Court to compel discovery because plaintiff submits that on the same day he submitted the discovery motion to the Court, he sent a request for discovery to the defendants but he has not received a response (Court File No. 35). In order to properly move to compel discovery pursuant to Rule 37 of the Federal Rules of Civil Procedure, plaintiff's motion must include a certification that the plaintiff has, in good faith, conferred or attempted to confer with the party not making the disclosure in an effort to secure the disclosure without court action. Plaintiff failed to include such a certification and his submissions do not reflect that he corresponded with defendants regarding the failure to respond to his discovery requests. Accordingly, his request to compel defendants to respond to his discovery appears to be premature. Therefore, his motion to compel discovery will be **DENIED WITHOUT PREJUDICE** subject to his right to file another motion to compel discovery should defendants fail to comply with the discovery requests (Court File No. 35).

In sum, plaintiff's motion for appointment of counsel, an emergency hearing, and to compel discovery is **DENIED** in its entirety (Court File No. 35).

### B. Plaintiff's Motion to Clarify

Plaintiff's motion to clarify is confusingly pled (Court File No. 39). Plaintiff claims that in addition to charging the defendants with violating the procedures identified in the Uniform Extradition Act, he is also charging them with violating his rights by abducting him in violation of the federal kidnaping laws. To the extent plaintiff is attempting to initiate a criminal action against the defendants for violating the federal kidnaping law, the violation of the federal kidnaping law is

6

not a constitutional violation within the ambit of § 1983. Moreover, private citizens have no authority to initiate federal prosecution of others for their alleged unlawful acts. *See Cok v. Cosentino*, 876 F.2d 1,2 (lst Cir. 1989) (per curiam). The "authority to initiate a criminal complaint rests exclusively with state and federal prosecutors." *Mercer v. Lexington Fayette Urban County Gov't.*, 52 F.3d 325 (6th Cir. 1995) (unpublished table decision), *available in* 1995 WL 222178, at *1. Thus, to the extent plaintiff is attempting to clarify his complaint to charge the defendants with violating the federal kidnaping law, such clarification is **DENIED** (Court File No. 39).

Barnett also asks the Court for clarification of the law regarding the Court's denial of defendant's motion for definite statement and the time in which defendants are to file a response. Defendants filed a timely response within ten days from the date of the Court's Order denying their motion for more definite statement. Thus, defendants' response is timely.

In sum, Barnett's motion for clarification is **DENIED** (Court File No. 39). To the extent he requests to clarify his complaint and charge the defendants with violating the federal kidnaping law the motion is **DENIED**; to the extent he seeks clarification of when the defendants answer is due the motion is **DENIED** as defendant's response is timely.

### C. Application for Default Judgment

Plaintiff moves the Court for Default Judgment against all defendants except District Attorney Cox (Court File No. 42). The Court denied defendants motion for more definite statement on March 20, 2007(Court File No. 34); defendants filed an answer on March 30, 2007 (Court File No. 37).

Judgement by default is a drastic step which should only be resorted to in the most extreme

cases. *See Amernational Industries v. Action-Tungsram Inc.,* 925 F.2d 970, 976 (6th Cir.) *cert. denied,* 501 U.S. 1233 (1991); *United Coin Meter Company Inc. v. Seaboard Coastline Railroad,* 705 F.2d 839, 845 (6th Cir. 1983). In the case before this Court, the defendants' response (Court File No. 37) was filed one day after plaintiff's motion for judgment by default. Furthermore, there has not been a showing of culpable conduct on the part of the defendants or any showing of prejudice by reason of defendant's alleged untimely filing of their answer. *See Acevedo v. Dan Motors,* 149 F.3d 1182, (Table, text at 1998 WL 382697 *2 (6th Cir. 1998) (Explains the proper analysis for determining whether to set aside a default judgement).

Accordingly, plaintiff's motion for default judgment is **DENIED** (Court File No. 42).

**D.    Motion to Amend**

Also before the Court is plaintiff's motion to amend his complaint to include as defendants, Hamilton County Government, Hamilton County board of Commissioners; and the Hamilton County Mayor. The lawsuit against Lt. Clark and the other named defendants in their official capacity, in effect, is a lawsuit against Hamilton County. Thus, the addition of Hamilton County as a defendant would be redundant.

Plaintiff also requests to amend his complaint by adding the Hamilton County Board of Commissioners and the Hamilton County Mayor as defendants in this matter. Plaintiff has not stated a claim, nor does the Court find any statement of a claim in the numerous submissions in this case against the Commissioners or Mayor of Hamilton County. Accordingly, plaintiff's motion to amend is **DENIED** (Court File No. 44).

Having disposed of the plaintiff's non-dispositive motions, the Court now turns to District

Attorney Cox's motion to dismiss (Court File No. 26) and his motion to stay discovery (Court File No. 38).

### III.     Standard of Review Under Rule 12(b)(1) & (6)

With regard to Rule 12(b)(6), the Court must construe the complaint in a light most favorable to the plaintiff and accept all factual allegations as true. *Sistrunk v. City of Strongsville*, 99 F.3d 194, 197 (6th Cir. 1996), *cert. denied*, 520 U.S. 1251(1997); *Cline v. Rogers*, 87 F.3d 176, 179 (6th Cir.), *cert. denied*, 519 U.S. 1008 (1996); *Wright v. Metro-Health Medical Center*, 58 F.3d 1130, 1138 (6th Cir. 1995), *cert. denied*, 516 U.S. 1158 (1996); *Columbia Natural Resources, Inc. v. Tatum*, 58 F.3d 1101, 1109 (6th Cir. 1995), *cert. denied*, 516 U.S. 1158 (1996). A motion to dismiss filed pursuant to Fed. R. Civ. P. 12(b)(6) will be granted "only if it is clear that no relief could be granted under any set of facts that could be proved consistent with the allegations." *Sistrunk*, 99 F.3d at 197, *quoting Hishon v. King & Spalding*, 467 U.S. 69, 73 (1984). When an allegation is capable of more than one reasonable inference, it must be construed in the plaintiff's favor. *Columbia Natural Resources*, 58 F.3d at 1109; *Allard v. Weitzman* (*In re DeLorean Motor Co.*), 991 F.2d 1236, 1240 (6th Cir. 1993); *Mayer v. Mylod*, 988 F.2d 635, 638 (6th Cir. 1993). A judge may not grant a Rule 12(b)(6) motion based on a disbelief of a complaint's factual allegations. *Wright*, 58 F.3d at 1138; *Columbia Natural Resources, Inc.*, 58 F.3d at 1109; *Allard*, 991 F.2d at 1240.

Although the standard of review is liberal, it does require more than the bare assertion of legal conclusions. *Lillard v. Shelby County Bd. Of Educ.*, 76 F.3d 716, 726 (6th Cir. 1996); *LRL Properties v. Portage Metro-Housing Authority*, 55 F.3d 1097, 1103-04 (6th Cir. 1995); *Allard*, 991 F.2d at 1240. The complaint must give the defendants fair notice of what the plaintiff's claim is and the grounds upon which it rests. *Lillard*, 76 F.3d at 726; *Gazette v. City of Pontiac*, 41 F.3d 1061,

1064 (6th Cir. 1994). "In practice, 'a . . . complaint must contain either direct or inferential allegations respecting all the material elements to sustain a recovery under some viable legal theory.'" *Lillard*, 76 F.3d at 726 (citations omitted). If the Court concludes the plaintiff can prove no set of facts in support of his claims that would entitle him to relief, then the Court must grant the motion. *Sistrunk*, 99 F.3d at 197.

**IV.    Facts**

The Court has reviewed the record in the light most favorable to plaintiff Barnett and makes the following findings of fact. Plaintiff claims the defendants violated his constitutional rights when they extradited him from Georgia on September 18, 2006. In 2004 plaintiff was serving a two year sentence in Georgia when he became aware of pending Tennessee charges. Plaintiff was notified by Baldwin State Prison authorities in Georgia that an NCIC check reflected pending warrants in Hamilton County, Tennessee. When plaintiff was transferred to Scott State Prison, he was again advised that a NCIC check reflected pending warrants in Hamilton County, Tennessee.

On May 5, 2005, plaintiff requested Warden Rose Williams to forward IAD forms on plaintiff's behalf to Hamilton County, Tennessee authorities. On or about May 18, 2005, the IAD forms were mailed to Hamilton County Criminal Court Clerk Gwen Tidwell. On May 25, 2005 Hamilton County Criminal Court Judge Rebecca Stern and Hamilton County Assistant District Attorney Bates Bryan signed IAD Form VII and mailed it to the Georgia authorities. On June 8, 2005, IAD Form VI was sent to Georgia authorities notifying them that Hamilton County authorities would pick up the plaintiff on July 6, 2005 (Court File No. 19-2). However, Georgia authorities notified Tennessee authorities that they could not obtain custody of plaintiff because a formal detainer had not been lodged. Consequently, District Attorney Cox lodged detainers for plaintiff

10

on June 17, 2005.  Plaintiff was subsequently advised, in August of 2005, to re-submit his IAD forms due to the fact that he filed his other IAD forms prematurely, but plaintiff refused to resubmit the IAD forms.

Due to plaintiff's failure to re-submit IAD forms subsequent to the formal filing of the detainers against him, he was not extradited until he completed serving his Georgia sentence in September of 2006.  The record does not reflect under what authority Georgia released Barnett to the Tennessee authorities.  Nevertheless, that fact has no bearing on the disposition of District Attorney Cox's motion to dismiss.

There are no factually supported allegations in the complaint against District Attorney Cox (Court File No. 19).  The only reference in the complaint to the District Attorney is plaintiff's claims District Attorney Cox signed certain correspondence which supported IAD documents containing District Attorney Cox's signatures (Court File No. 19).  In addition, Barnett claims District Attorney Cox attempted to trick him into signing a second set of IAD forms.  The Court presumes this allegation is based on the correspondence from District Attorney Cox's office, which, in fact, was not signed by District Attorney Cox, advising Barnett that his original IAD forms were not honored because a formal detainer had not been lodged against him.  The correspondence informed him that he must complete another set of IAD forms before they could honor his request for a trial.  Barnett refused to complete a second set of IAD forms.

## V.    Analysis

District Attorney Cox has filed a motion to dismiss raising several reasons in support of his motion. District Attorney Cox contends the Court should abstain from interfering in the on-going state criminal proceedings pursuant to the doctrine of abstention. In addition, District Attorney Cox asserts that to the extent he is sued in his official capacity, the Eleventh Amendment bars claims for money damages and absolute prosecutorial immunity protects him to the extent he is being sued in his individual capacity. The Court will address each ground for dismissal separately.

### A. Doctrine of Abstention

Plaintiff requests relief in the form of monetary damages as well as requesting the Court to order the dismissal of the pending state criminal charges. District Attorney Cox has moved to dismiss Barnett's action claiming the doctrine of abstention requires the dismissal of plaintiff's complaint as plaintiff's state criminal proceedings are on-going.

The record indicates charges are pending against plaintiff in Hamilton County Criminal Court. It appears from the documents filed by plaintiff that he has not been tried on the state charges. To the extent plaintiff requests the Court to interfere with the state court case, the Court declines plaintiff's invitation as the Court must abstain from becoming involved in plaintiff's ongoing
criminal cases pursuant to the abstention doctrine. The abstention doctrine requires the dismissal of plaintiff's claim to the extent he requests the Court to interfere in the state criminal proceedings.

To the extent this case constitutes a collateral attack on those pending state criminal judicial proceedings, this Court is precluded from interfering with a pending state prosecution. It is well settled that a federal court must abstain from deciding issues implicated in an ongoing criminal proceeding in state court except in extraordinary circumstances. *Younger v. Harris,* 401 U.S. 37

(1971). Under the abstention doctrine established by *Younger v. Harris*, the target of an ongoing state prosecution is required to raise any and all constitutional claims as defenses to that action in the state courts and may not file a collateral federal action raising the same claims. *See Gottfried v. Medical Planning Service, Inc.,* 142 F.3d 326, 329 (6th Cir.), *cert. denied,* 525 U.S. 1041 (1998). If the relief sought would disrupt the state criminal proceeding, it is generally prohibited by the *Younger* doctrine. A United States court only has the power to enjoin state officers from instituting criminal actions when absolutely necessary under extraordinary circumstances, where the danger of irreparable loss is both great and immediate. *Younger,* 401 U.S. at 43-46, *Douglas v. City of Jeannette*, 319 U.S. 157 (1943). Such is not the case in plaintiff's situation.

The doctrine of abstention precludes the Court from entertaining this action to the extent plaintiff requests the Court to interfere with his state criminal proceedings. Accordingly, to the extent plaintiff's complaint constitutes a collateral attack on his pending state criminal judicial proceedings, it will be **DISMISSED**.[3]

### B. Eleventh Amendment Immunity

Plaintiff claims he was improperly extradited to the State of Tennessee for prosecution.

---

[3] However, to the extent plaintiff requests monetary damages under § 1983 the abstention doctrine generally is not applicable. Although it does not appear that the manner in which plaintiff was brought before the state court on his pending criminal charges affects the state court's jurisdiction or the prosecution of the state criminal case, the alleged irregularities in the manner in which he was extradited may provide him grounds for relief under § 1983. It appears that under certain circumstances, whether or not an extradition itself was justified, when the procedures to accomplish an extradition are deficient, a plaintiff may recover for any injury, such as emotional distress, caused by the deprivation of due process itself. *See Cuyler v. Adams*, 449 U.S. 433 (1981) ("[W]e conclude as a matter of federal law that prisoners transferred pursuant to the provisions of the [Detainer] Agreement are not required to forfeit any pre-existing rights they may have under state or federal law to challenge their transfer to the receiving State.

Plaintiff claims the extradition occurred in violation of the Interstate Agreement on Detainers Act and that District Attorney Cox signed certain correspondence involved in the extradition process. However, it does not appear that plaintiff makes any specific factually supported allegations against District Attorney Cox showing District Attorney Cox violated his constitutional rights.

The facts construed in the light most favorable to the plaintiff do not state a claim against District Attorney Cox. Although plaintiff makes claims that the District Attorney tried to trick him into filing a second set of IAD forms and he conspired with other defendants to deny plaintiff his IAD rights, plaintiff has not provided any factual support for these bald claims. Undoubtedly, District Attorney Cox could not have extradited plaintiff from Georgia on July 6, 2005, against the orders of the Georgia authorities. District Attorney Cox appears to have made a diligent effort to gain custody of plaintiff. However, plaintiff's refusal to re-submit the IAD forms prevented him from being extradited. Although it appears there is a question as to whether the extradition violated the IAD rules, there is nothing before the Court demonstrating District Attorney Cox violated the extradition procedures.

Nevertheless, it appears that plaintiff's claim against District Attorney Cox arises solely out of the extradition proceedings and, as a general matter, prosecutors are immune from suit for monetary damages when they act in their prosecutorial capacities. *See Imbler v. Pachtman*, 424 U.S. 409 (1976); *see also Burns v. Reed*, 500 U.S. 478 (1991). District Attorney Cox is a state employee. Tenn. Code Ann. § 8-42-101(3)(A). Such an action is in essence a claim against the State. *Edelman v. Jordan,* 415 U.S. 651, 663 (1974). Suing a state officer in his official capacity for damages is equivalent to suing the state itself which is prohibited by the Eleventh Amendment. *See Wells v. Brown,* 891 F.2d 591, 592 (6th Cir. 1989). The Eleventh Amendment bars such suit unless the State

has waived its immunity, *Welch v. Texas Dept. Of Highways and Public Transportation,* 483 U.S. 468, 472-473 (1987) (plurality opinion), or unless Congress has exercised its undoubted power under § 5 of the Fourteenth Amendment to override that immunity. *Will v. Michigan Dept. Of State Police,* 491 U.S. 58, 65 (1989).

The Supreme Court has held that 42 U.S.C. § 1983 does not abrogate Eleventh Amendment immunity. *Quern v. Jordon*, 440 U.S. 332 (1979). Plaintiff has not shown, nor does this Court find, that the State of Tennessee has waived its immunity or that Congress has exercised it power to override that immunity in this situation. *Berndt v. State*, 796 F.2d 879, 881 (6th Cir. 1986). The United State Supreme Court has ruled that neither a state nor its officials acting in their official capacities are persons under § 1983. *Id.* at 71. Thus federal courts do not have subject matter jurisdiction over causes of actions against officers of a state being sued in their official capacity for damages. *See Cummings v. Wilkerson,* 134 F.3d 370 (6th Cir. Jan. 23, 1998), (Table text) *available in* 1998 WL 30803, at *1, *citing Wells,* 891 F.2d at 593). Accordingly, the claims against District Attorney Cox in his official capacity will be **DISMISSED.**

### C. Absolute Prosecutorial Immunity

To the extent plaintiff has sued District Attorney Cox in his individual capacity, the complaint is subject to dismissal for failure to state a viable claim under 42 U.S.C. § 1983. The United States Supreme Court, in *Imbler v. Pachtman*, 424 U.S. 409 (1976) established the absolute immunity of a prosecutor from a civil suit for damages under 42 U.S.C. § 1983 "in initiating a prosecution and in presenting the state's case." *Id*. at 427, 431. Plaintiff is challenging the legality of District Attorney Cox's actions as it relates to the extradition process. First, plaintiff has not alleged sufficient facts that, if true, establishes District Attorney Cox deprived him of a right secured

by the Constitution of the United States. Plaintiff's allegations that District Attorney Cox tried to trick him into signing a second set of IAD papers or that District Attorney Cox was part of a conspiracy are factually unsupported conclusions and this Court is not required to accept as true, legal conclusions or unwarranted factual inferences. *See Murphy v. Sofamor Danek Group Inc. (In re Sofamor Danek Group, Inc.*), 123 F.3d 394, 400 (6th Cir. 1997), *cert. denied,* 523 U.S. 1106 (1998).

To the extent plaintiff raises claims on the basis of District Attorney Cox signing the IAD forms and correspondence, the district attorney's alleged signing of these documents is not actionable under 42 U.S.C. § 1983. The signing of these documents is a quasi-judicial function, and prosecutors have absolute immunity from claims arising out of the performance of that function. *Imbler v. Pachtman,* 424 U.S. at 430; *Joseph v. Patterson,* 795 F.2d 549, 555-57 (6th Cir. 1986), *cert. denied,* 481 U.S. 1023 (1987). Absolute prosecutorial immunity protects the acts falling within a prosecutor's role as advocate for the state. *See Manetta v. Macomb County Enforcement Team,* 141 F.3d 270, 279 (6th Cir. 1998); *Ireland v. Tunis,* 113 F.3d 1435, 1445 (6th Cir.), *cert. denied,* 522 U.S. 996(1997). "Investigative acts under-taken in direct preparation of judicial proceedings, including the professional evaluation of evidence, warrant absolute immunity[.]" *Ireland v. Tunis,* 113 F.3d at 1445. "Prosecutors are entitled to absolute immunity for 'initiating a prosecution and . . . presenting the state's case." *Lomaz v. Hennosy,* 151 F.3d 493, 498 (6th Cir. 1998), *quoting Imbler v.Pachtman,* 424 U.S. at 430. This immunity extends to all decisions to prosecute except those "deliberately based upon an unjustifiable standard such as race, religion, or other arbitrary classification." *Wayte v. United States,* 470 U.S. 598, 608 (1985), *quoting Bordenkircher v. Hayes,* 434 U.S. 357 (1978).

A prosecutor who accomplishes the extradition of a criminal defendant pursuant to the Interstate Agreement on Detainers Act is performing a prosecutorial function and is immune from suit with respect to those activities. *Fitzgerald v. McCauley*, 798 F.2d 469 (6th Cir. June 16, 1986) (Unpublished Table Decision), *available in* 1986 WL 16064 (defendants had prosecutorial immunity for having plaintiff brought to state court without the benefit of an Interstate Agreement on Detainers documents). Thus, District Attorney Cox is immune from this lawsuit.

Accordingly, the claims against District Attorney Cox will be **DISMISSED** for failure to state a claim on which relief may be granted under 42 U.S.C. § 1983 because plaintiff has not alleged a claim which falls outside of District Attorney Cox's immunity. 28 U.S.C. §§ 1915A and 1915(e). District Attorney Cox's motion to dismiss (Court File No. 26) as well as his motion to stay discovery (Court File No. 38) are **GRANTED.**

Remaining for adjudication are the claims against Lt. Clark, Officer Cox, Deputy Siler, Sheriff Long, and Jim Hart. An appropriate order will enter.

                                           */s/ R. Allan Edgar*
                                              R. ALLAN EDGAR
                                   UNITED STATES DISTRICT JUDGE