UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TENNESSEE
AT CHATTANOOGA

JAMES A. BARNETT,                          )
                                           )
        *Plaintiff*,                        )
                                           )
v.                                         )        No. 1:06-cv-235
                                           )        *Edgar/Lee*
LENDA CLARK; KEN COX;                      )
DEPUTY SILER; SHERIFF BILLY LONG;          )
JIM HART, CHIEF OF CORRECTIONS;            )
HAMILTON DISTRICT ATTORNEY BILL            )
COX;                                       )
                                           )
        *Defendants*.                       )

## <u>MEMORANDUM</u>

James A. Barnett ("Plaintiff"), a former Tennessee inmate brings this *pro se* complaint for

damages pursuant to 42 U.S.C. § 1983, contending that he was illegally extradited to Tennessee in

violation of his constitutional rights. Plaintiff has been released and now resides in Georgia (Court

File # 67). The defendants are Lt. Lenda Clark ("Lt. Clark"), Ken Cox ("Deputy Cox"), Deputy Siler

("Deputy Siler"), Sheriff Billy Long ("Sheriff Long"), and Jim Hart, Chief of Corrections at Hamilton

County Jail ("Chief Hart"). Hamilton County District Attorney Bill Cox was dismissed from this

litigation by previous Order of this Court (Court File #53).

Plaintiff asserts Defendants violated his constitutional rights when they extradited him from

Georgia to Tennessee in absence of a signed Governor's extradition warrant, wavier of extradition

rights, or habeas hearing. Plaintiff contends he is entitled to damages for these constitutional

violations.

Defendants contend that a violation of the procedures provided in the Uniform Criminal

1

Extradition Act ("UCEA"), codified in Tennessee at Tenn. Code Ann. § 40-9-101 et. seq.[1] does not

create a cognizable constitutional claim under § 1983 in the Sixth Circuit and the release of Plaintiff

in September of 2006 to the Hamilton County Sheriff's Department is governed by the UCEA.

Additionally, Defendants contend they had no obligation to ensure the asylum state, Georgia,

complied with pre-extradition proceedings and they were justified in relying upon the information

given by Georgia authorities that Hamilton County should receive Plaintiff from Georgia custody

pursuant to the hold they had placed on him.

Presently before the Court is Defendants' motion for summary judgment (Court File # 68) and

Plaintiff's responses (Court File #71 & 75). For the reasons below, Defendants' motion for summary

judgment will be **GRANTED** (Court File # 68) and Plaintiff's complaints (Court File #2, 13, 14, &

19) will be **DISMISSED**.

## I.    <u>Standard of Review Under Rule 56</u>

Fed. R. Civ. P. 56(c) provides that summary judgment will be rendered if there is no genuine

issue as to any material fact and the moving party is entitled to judgment as a matter of law. The

burden is on the moving party to conclusively show that no genuine issue of material fact exists, and

the Court must view the facts and all inferences to be drawn therefrom in the light most favorable to

the nonmoving party. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986);

*Morris v. Crete Carrier Corp.*, 105 F.3d 279, 280-81 (6th Cir. 1997); *60 Ivy Street Corp. v.*

---

[1]    Title 18 U.S.C. § 3182 is titled Fugitives from State or Territory to State, District, or Territory and is referred to as the Extradition Act. For purposes of this memorandum opinion 18 U.S.C. § 3182 will be identified as the Extradition Act, and the Uniform Criminal Extradition Act, codified in Tennessee as Tenn. Code Ann. § 40-9-101 et. seq. will be identified as UCEA.

*Alexander*, 822 F.2d 1432, 1435 (6th Cir. 1987).

When there is no factual dispute, the determination of whether to grant summary judgment is a question of law. An absence of a genuine issue of material fact requires the Court to determine whether the non-movant has submitted significant probative evidence to support his claim, and from which a jury could find for the non-movant. *Celotex Corp. v. Catrett*, 477 U.S. 317, 324 (1986); *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 249 (1986). When the parties do not dispute the basic facts, the decision turns on a question of law: whether the alleged facts show a violation of clearly established law. *Anderson*, 477 U.S. at 252; *Bailey v. Floyd County Bd. Of Educ.,* 106 F.3d 135, 140 (6th Cir. 1997). If the Court concludes that a fair-minded jury could not return a verdict in favor of the nonmoving party based on the evidence presented, it may enter a summary judgment. *Anderson*, 477 U.S. at 251-52*; University of Cincinnati v. Arkwright Mut. Ins. Co.*, 51 F.3d 1277, 1280 (6th Cir. 1995); *LaPointe v. UAW, Local 600*, 8 F.3d 376, 378 (6th Cir. 1993).

## II.  Facts

The facts are not disputed for purposes of summary judgment. In 2004, while serving a two-year sentence in Georgia Plaintiff learned that charges were pending against him in Tennessee. The Georgia prison authorities advised Plaintiff that a National Crime Information Center ("NCIC") check revealed pending charges in Tennessee.

Although no detainer had been lodged, Plaintiff initiated the process of disposing of the pending charges in Tennessee under the Interstate Agreement on Detainers Act ("IAD"). On May 5, 2005, Plaintiff requested the Georgia Prison Warden to forward the required IAD forms to Hamilton County, Tennessee authorities to have those charges resolved. Thirteen days later, the IAD forms were mailed to Hamilton County Criminal Court Clerk Gwen Tidwell. Tennessee authorities

signed IAD Form VII (notice of prosecutor's acceptance of temporary custody offered in connection for disposition of a detainer) (Court File # 14, Exhibit 1)  and mailed it to the Georgia authorities. On June 8, 2005, "Agreement on Detainers: Form VI Evidence of Agents Authority to Act for Receiving State" (Court File # 19, Exhibit 12), was sent to Georgia authorities notifying them that Hamilton County authorities would pick up Plaintiff on July 6, 2005.  Georgia authorities, however, notified Tennessee authorities, five days afterwards, that because no formal detainer had been lodged, they could not obtain custody of Plaintiff  (Affidavit of Susan Roberson (Court File # 14, Exhibit 3a). Hamilton County officials attempted to resolve the problem by filing a formal detainer with Georgia on June 17, 2005.  The detainer was lodged and Plaintiff was advised that he must resubmit his IAD forms as they had been submitted prematurely when they were filed before the detainer had been lodged.  Plaintiff refused.[2]   Because of his refusal, Plaintiff was not extradited until he completed serving his Georgia sentence on September 18, 2006.

During the interim, Georgia notified Defendants that Plaintiff's release was imminent and advised them to be prepared to assume custody of Plaintiff.[3]   On Plaintiff's release date, Deputies Cox and Siler arrived at Scott State Prison in Hardwick, Georgia, for the purpose of taking custody of him and bringing him to Tennessee for prosecution.  A proper demand for Plaintiff had not been

---

[2]      The Hamilton County District Attorney's office also advised Plaintiff (by letter) that his original IAD forms were not honored because a formal detainer had not been lodged against him at the time he signed the IAD forms.   The correspondence informed him that he must complete another set of IAD forms before they could honor his request for a trial (Court File # 19, Exhibit 2).

[3]      On July 10, 2006, Plaintiff filed a complaint under § 1983, in the United States District Court in Macon, Georgia, seeking injunctive relief and monetary damages based on the alleged denial by the Georgia defendants of Plaintiff's IAD rights.  It appears this case is still pending. *Barnett v. Donald*, 2007 WL 2874323 (M.D. Ga. Sept. 26, 2007).

made in accordance with the UCEA, Tenn.Code Ann. § 40-9-121, which provides the procedures for making a demand for fugitives from this state. Thus, Plaintiff was extradited without an extradition warrant or proper waiver of extradition. Plaintiff informed Deputy Cox he did not have legal authority to extradite him. Deputy Cox telephoned Lt. Clark about the extradition issue and announced Lt. Clark "said for Cox to show the prison folks the warrants for my arrest signed by the Hamilton Co. Judge and that if they give me over to him to take me in spite of the lack of legal extradition papers because she wasnt [sic] wasting a 6-7 hour round trip for nothing and if Barnett does not like it, sue her." (Court File # 14). Deputy Cox then cuffed and shackled Plaintiff and Deputy Siler transported him to Tennessee (Court File # 2). Deputies Cox and Siler took custody of Plaintiff based on the representation of the Georgia authorities that he "was ready for release" (Court File #74, at 7).

### III.    Law

42 U.S.C. § 1983 provides in relevant part

Every person who, under color of any statute, ordinance, regulation, custom, or usage of any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress ...

To state a viable § 1983 claim, a plaintiff must allege he (1) was deprived of a right, privilege, or immunity secured by the Constitution or laws of the United States; and (2) the deprivation was caused by a person while acting under color of state law. *Flagg Bros. Inc. v. Brooks*, 436 U.S. 149, 155-156 (1978); *Harbin-Bey v. Rutter*, 420 F.3d 571, 575 (6th Cir. 2005); *Brock v. McWherter*, 94 F.3d 242, 244 (6th Cir. 1996). To state a § 1983 claim, Plaintiff must allege sufficient facts that, if true, would establish the Defendants deprived him of a right secured by the Constitution of the United

5

States while they acted under color of law. *See Brock*, 94 F.3d at 244.

IV. **Analysis**

A. **IAD Claim**

To the extent Plaintiff is raising an IAD claim, he did not properly invoke the IAD procedures. The IAD is an interstate compact that addresses the transportation of prisoners from one state to another state for the purpose of standing trial in the second state. The United States, forty-eight states (including Georgia and Tennessee), and the District of Columbia have entered into the IAD, a compact to establish procedures for resolution of one jurisdiction's outstanding charges against another jurisdiction's prisoner. *See New York v. Hill*, 528 U.S. 110, 111 (2000). The IAD provides certain procedural protections for the inmate, such as the right to speedy trial. As explained below, Plaintiff's waiver of extradition was premature as it was filed prior to the lodging of the detainer. Thus, the IAD was never properly invoked. *See Jenkins v. Snyder*, 3 Fed..Appx. 350 (6th Cir. 2001), *available in* 2001 WL 111642("The provisions of the IAD are not triggered until a detainer is filed with the custodial state by another state having *untried* charges pending against the prisoner.")(emphasis in original).

A state seeking to bring charges against a prisoner who is serving a sentence in another jurisdiction begins the process by filing a detainer with the agency having custody of him. A detainer "is simply a notice to prison authorities that charges are pending against an inmate elsewhere, requesting the custodian to notify the sender before releasing the inmate." *Ridgeway v. United States*, 558 F.2d 357, 360 (6th Cir. 1977), *cert. denied*, 436 U.S. 946 (1978). "Filing a detainer is an informal process which does not bind the authorities to act." *Id.* at 360. Once a detainer is filed, either an inmate or a prosecutor can request expeditious disposition of the outstanding detainer and its

underlying charges.  *See* 18 U.S.C. app. § 2.

Articles III and IV are the central provisions of the IAD.  Article III of the agreement provides a procedure by which a prisoner against whom a detainer has been filed can demand a speedy and final disposition of the charges pending against him in another jurisdiction which gives rise to the detainer.  *See Alabama v. Bozeman*, 533 U.S. 146, 150 (2001). Section (c) of Article III requires the warden of the institution in which the prisoner is incarcerated to promptly inform the prisoner of the source and contents of any detainer lodged against him and of his right to request final disposition of the charges. Section (a) of Article III requires the jurisdiction that filed the detainer to bring the prisoner to trial within 180 days if he does make a request for final disposition.  To assert this right, the prisoner must first file a request for final disposition with the warden or other officer having custody of him.

Article IV(c) of the IAD requires dismissal of the charges in the event that an action is not brought to trial within 180 days of the prosecutor and court's receipt of the prisoner's request for final disposition.  Article IV(a) provides the method by which a prosecutor who has lodged a detainer against a prisoner in another State can secure the prisoner's presence for disposition of the outstanding charges.  Tennessee did not invoke Article IV(a).

The Supreme Court has recognized that a plaintiff may state a § 1983 claim for relief if he is transferred pursuant to the IAD in violation of any pre-existing rights he may have under state or federal law.  *Cuyler v. Adams*, 449 U.S. 433 (1981). The Supreme Court has also concluded "the stated purpose of the Agreement is to encourage the *expeditious* and orderly disposition of [outstanding] charges and determination of the proper status of any and all detainers based on untried indictments, informations, or complaints." *United States v. Mauro*, 436 U.S. 340, 358-60 (1978).

(citations and internal quotes omitted) (emphasis in original).

At the time Plaintiff made his request for final disposition, a detainer had not been lodged against him. Thus the IAD rules and procedures were not invoked by that request. Article III of the IAD, 18 U.S.C. App. 2, specifically provides that the request for final disposition must pertain to "untried indictments, informations, or complaints on the basis of *which detainers have been lodged* against the prisoner ..."[4] (emphasis added). Both the Supreme Court of the United States and the Sixth Circuit have ruled that the provisions of the IAD are applicable only after a detainer has been lodged. *United States v. Mauro*, 436 U.S. 340, 361 (1978) (IAD was not applicable and the United States was never bound by its provisions because the Government never filed a detainer against the defendant); *United States v. Dixon*, 592 F.2d 329, 333 (6th Cir. 1979) ("[T]he provisions of the

---

[4] In pertinent part, the Interstate Agreement on Detainers Act, 18 U.S.C.App. 2, Article III, states as follows:

(a) Whenever a person has entered upon a term of imprisonment in a penal or correctional institution of a party State, and whenever during the continuance of the term of imprisonment there is pending in any other party State any untried indictment, information, or complaint on the basis of which a detainer has been lodged against the prisoner, he shall be brought to trial within one hundred and eighty days after he shall have caused to be delivered to the prosecuting officer and the appropriate court of the prosecuting officer's jurisdiction written notice of the place of his imprisonment and his request for a final disposition to be made of the indictment, information, or complaint.

(d) Any request for final disposition made by a prisoner pursuant to paragraph (a) hereof shall operate as a request for final disposition of all untried indictments, informations, or complaints on the basis of which detainers have been lodged against the prisoner from the State to whose prosecuting official the request for final disposition is specifically directed.

[Interstate] Agreement [on Detainers Act] are applicable only when a participating jurisdiction, having untried charges pending against a prisoner, first lodges a detainer with the participating jurisdiction where the prisoner is incarcerated."). Therefore, Plaintiff's initial request was premature since there was no detainer lodged at that time. After the detainer was formally lodged, Plaintiff was notified by Georgia and Tennessee authorities that he must complete another set of IAD forms before his request for trial could be honored. Once the detainer was properly lodged, Plaintiff refused to file an IAD request seeking final disposition of his Tennessee charges.

Plaintiff was not prevented from conforming to the IAD provisions. Indeed, both the Georgia and Tennessee authorities encouraged Plaintiff to properly invoke the IAD after the detainer was lodged but he refused. Thus, the provisions of the IAD were not invoked after Tennessee filed a detainer since neither the prosecutor nor Plaintiff requested final disposition of the Tennessee charges. Plaintiff refused to complete a second set of IAD forms, and consequently failed to invoke Article III requiring final disposition of his Tennessee cases. Georgia authorities advised Tennessee authorities when Plaintiff's release was imminent. Based upon that notification, Tennessee authorities proceed to Georgia and assumed custody of Plaintiff upon his release from incarceration in Georgia.

In summary, because a formal detainer was not lodged against Plaintiff prior to him filing IAD Forms II, III, and IV, on May 6, 2005, requesting disposition of pending charges in Hamilton County, Tennessee, there was no duty on the Georgia Authorities to deliver Plaintiff to the Tennessee Authorities as the IAD was not properly invoked. The IAD was not violated based on any request Plaintiff made *prior* to the lodging of the detainer. And it was not violated after the detainer was

lodged because neither Plaintiff nor the prosecutor requested final disposition of the Tennessee charges.[5]

**B.      Constitutional/UCEA Claim**

If Plaintiff has a claim against the Defendants, it is based on Defendants failure to follow proper extradition procedures.  There is a conflict among the Circuits as to whether extradition without compliance with state extradition procedures amounts to a violation of a prisoner's federal rights.  Undoubtedly, law enforcement officers who transport fugitives from one state to another without extradition proceedings are acting under color of state law.  However, there is conflict among the courts as to whether a prisoner's constitutional rights are violated when he is extradited without compliance with state extradition procedures.  This conflict results from differing interpretations of the interaction between federal and state provisions concerning extradition.  The authority to extradite fugitives from one state to another is established in Article IV § 2, Clause 2 of the United States Constitution, and this power is implemented by a federal statute, 18 U.S.C. § 3182.  The procedures for extradition, however, are a matter of state law.  The Extradition Clause of the United States Constitution provides that:

> A person charged in any State with Treason, Felony, or other crime, who shall flee
> from Justice, and be found in another State, shall on Demand of the executive
> Authority of the State from which he fled, be delivered up, to be removed to the State
> having Jurisdiction of the Crime.

U.S. Const. art. IV, § 2, cl. 2.  This clause does not purport to confer any right on a fugitive, rather, it confers rights and duties on the executive authorities of the states.   The Extradition Clause does

---

[5]      Plaintiff has submitted an email reflecting the Georgia Authorities called the Hamilton County Authorities on September 18, 2006, notifying them Plaintiff was being paroled on that date to Hamilton County's detainer.  However, there are no documents substantiating this claim.

not specifically establish a procedure by which interstate extradition is to take place. The Extradition Act was enacted to implement the power to extradite. 18 U.S.C. § 3182. Fugitives from State or Territory to State, District or Territory.

To implement the Extradition Clause, Congress has provided:

Whenever the executive authority of any State or Territory demands any person as a fugitive from justice, of the executive authority of any State, District or Territory to which such person has fled, and produces a copy of an indictment found or an affidavit made before a magistrate of any State or Territory, charging the person demanded with having committed treason, felony, or other crime, certified as authentic by the governor or chief magistrate of the State or Territory from whence the person so charged has fled, the executive authority of the State, District or Territory to which such person has fled shall cause him to be arrested and secured, and notify the executive authority making such demand, or the agent of such authority appointed to received the fugitive, and shall cause the fugitive to be delivered to such agent when he shall appear.

18 U.S.C. § 3182. Like the Extradition Clause, this statute does not purport to confer any rights on a fugitive, but rather, confers rights and duties on the executive authorities of the states.

Plaintiff claims the State of Tennessee extradited him from Georgia without proper extradition authority as they did not possess a governor's warrant or any other valid waiver of extradition and taking him violated his constitutional rights because he had not attended an extradition hearing or pre-transfer hearing. Specifically, Plaintiff claims Defendants violated his "Constitutional federally protected Extradition Rights." (Court File # 2).

Defendants contend that a violation of the Extradition Act does not create a cognizable claim under § 1983 in the Sixth Circuit. *Barton v. Norrod*, 106 F.3d 1289 (6th Cir.) ("[F]ailure to comply with established [Extradition Act] procedures does not deprive the fugitive of any protected right"), *cert. denied*, 522 U.S. 934 (1997). Defendants additionally argue that although *Cuyler v. Adams*, 449

U.S. 433 (1981) (an IAD case)[6] may recognize a fugitive's claim for relief under 42 U.S.C. § 1983 for the failure to grant a fugitive the requisite pre-transfer hearing, any such failure would be the responsibility of the asylum state, in the instant case--Georgia, not the demanding state, Tennessee.[7]

There is a conflict among the courts as to whether failure to comply with state extradition procedures amounts to a violation of a prisoner's constitutional rights. A minority of the courts have concluded that a failure to comply with state extradition procedures does not violate any federal constitutional right because the purpose of the constitutional provision is designed for the benefit of

---

[6]     The *Cuyler* Court concluded that the interpretation of the IAD presents a question of federal law and as a matter of statutory construction, a prisoner incarcerated in a jurisdiction that has adopted the Extradition Act is entitled to procedural protection of the act, particularly the right to a pre-transfer hearing before being transferred to another jurisdiction pursuant to Article IV of the IAD which provides procedures by which a prosecutor of a receiving state may initiate transfer of a prisoner in the asylum state. The case before the Court does not pertain to Article IV of the IAD.

[7]     Alternatively, Defendants seemingly claim Plaintiff was extradited on the basis of Form II (*i.e.*, Inmate's Notice of Imprisonment and Request for Disposition of Indictments, Informations, or Complaints) which effectively waives extradition, a form he executed prior to the lodging of the detainer. This is a curious position considering the waiver was deemed premature and was invalid for purposes of invoking the protections of the IAD. If the waiver was unenforceable under the IAD law, how then could it be valid as a waiver of extradition in this situation? And if it were valid, as Defendants insist, then the Tennessee charges should have been either resolved within 180 days or dismissed. Although Defendants claim neither Plaintiff nor Georgia officials notified them the waiver expired or was revoked, the waiver provides that "[f]ailure to take action in accordance with the Agreement on Detainers, to which your state is committed by law, will result in the invalidation of the indictments, informations or complaints." The waiver arguably contemplates that it expires at the expiration of the 180 day period in which a defendant must be brought to trial under the IAD. Nevertheless, it does not appear that the waiver was valid as Tennessee had not filed a detainer at that time.
Additionally, Defendants did not file a detainer with the Georgia prison until June 17, 2005. Therefore, it does not appear Plaintiff could fairly be found to have waived rights that he did not even possess until a month after signing the waiver. Thus, it is inconceivable that Plaintiff's initial waiver of extradition, while being ineffective to invoke the IAD, was enforceable for purposes of extradition more than a year later.

the states and not the fugitive.[8]  A majority of the courts addressing this issue have concluded that

failure to comply with state extradition procedures when transporting a fugitive across state lines is

a violation of federal rights within the meaning of 42 U.S.C. § 1983.

The Sixth Circuit, disagreeing with the majority of Courts that have recognized a § 1983

claim for failure to comply with state extradition procedures, has concluded that the constitutional

and statutory provisions[9] regarding Extradition are not designed to protect fugitives, but rather, are

designed to facilitate the administration of justice between states. *Barton v. Norrod*, 106 F.3d 1289,

1295 (6th Cir. 1997).  The Sixth Circuit reached its conclusion as explained below:

> [W]e believe that to allow a fugitive to proceed against officers of the demanding
> state for failure to comply with extradition procedures would, in effect, recognize the
> right of asylum in the state to which the fugitive has fled. In *Mahon v. Justice*, the
> Supreme Court made clear that no such right is supported by the Extradition Clause
> and statute. 127 U.S. 700, 8 S.Ct. 1204, 32 L.Ed. 283 (1888). In that case, a fugitive
> from justice was kidnapped in West Virginia and forcibly carried back to Kentucky.
> His release was sought by writ of habeas corpus on a theory that under the
> constitution and laws of the United States, the fugitive had a right of asylum in the
> state to which he fled except when removed in compliance with extradition
> procedures. This theory was flatly rejected by the Supreme Court and the Court has
> never wavered from this position. *See Ker v. Illinois*, 119 U.S. 436, 7 S.Ct. 225, 30
> L.Ed. 421 (1886) and *Lascelles v. Georgia*, 148 U.S. 537, 13 S.Ct. 687, 37 L.Ed. 549
> (1893).

Additionally, we find instructive the Supreme Court teachings, upholding the

---

[8]     This conclusion is supported by the Supreme Court's observation in *Michigan v. Doran*, 439 U.S. 282, 287 (1978) that "[t]he Extradition Clause was intended to enable each state to bring offenders to trial as swiftly as possible in the state where the alleged offense was committed [;] ... preclude[] any state from becoming a sanctuary for fugitives from justice of another state[; and] serve[] important national objectives of a newly developing country striving to foster national unity."  *Id.* at 287-88.

[9]     The specific procedures are found in the Uniform Criminal Extradition Act ("UCEA"), which was approved in 1926 and revised in 1936.  Forty-eight states, including Tennessee and Georgia have adopted the provisions.  *See* Tenn. Code Ann. § 40-9-101.

conviction of fugitives who have been returned to the demanding state without strict compliance with extradition procedures. In those cases, the Court has made clear that the "sole object of the provision of the constitution, and the act of congress to carry it into effect, is to secure the surrender of persons accused of crime, who have fled from the justice of the state whose laws they are charged with violating." *Lascelles*, 148 U.S. at 542, 13 S.Ct. at 689.

A fugitive can challenge extradition by petitioning for a writ of habeas corpus, but the purpose of the writ is very limited because it only affects his detention in the asylum state. It does not affect the underlying charges against him. [*Johnson* v.]Buie, 312 F.Supp. [1349] 1351 [(W.D. Mo.1970)] ("The theory behind permitting the fugitive to petition for habeas corpus in the asylum state is that it is a method of challenging the legality of his detention there."). Once the fugitive is returned to the demanding state, the right to challenge extradition becomes moot: the fugitive is no longer being detained by the asylum state, and so, the legality of his or her detention there is no longer at issue. We believe those courts that have suggested that deprivation of the right to file a habeas corpus petition alone is sufficient to state a § 1983 cause of action are misguided. *See Crumley* [v. *Snead*], 620 F.2d [481], 483 ([5th Cir. 1980)], and *Morrison v. Stepanski*, 839 F.Supp. 1130, 1136 (M.D.Pa.1993). The fact that a fugitive no longer has a right to petition for a writ of habeas corpus challenging extradition does not mean that he is left without constitutional protection. "[I]n delivering up an accused person to the authorities of a sister state [asylum state officials] are not sending him for trial to an alien jurisdiction, with laws which our standards might condemn, but are simply returning him to be tried, still under the protection of the federal Constitution but in the manner provided by the state against the laws of which it is charged that he has offended." *Biddinger* [v. *Commissioner of Police of City of New York*], 245 U.S. [128],[(1917)].

Moreover, no constitutional protection is lost, since the extradition proceedings cannot inquire into the guilt or innocence of the charged party. *See* [*California*] v. *Superior Court*, 482 U.S. [400], 408, [(1987)]. While we do not condone officials who fail to comply with extradition procedures, a fugitive's rights are sufficiently protected by those limitations placed on the demanding state by the Constitution when determining his guilt or innocence. And the Constitution "is satisfied when one present in court is convicted of crime after having been fairly apprized of the charges against him and after a fair trial in accordance with constitutional procedural safeguards." *Buie*, 312 F.Supp. at 1351. Allowing an additional layer of constitutional challenge affords the fugitive little benefit, while placing an unnecessary burden on the extradition process,
something the Supreme Court has stressed must not be done. *See In re Strauss*, 197 U.S. [324], 332-33 [(1905)].

*Barton v. Norrod*, 106 F.3d at 1297 -1299.

While this Court does not condone Defendants' failure to comply with extradition procedures, this Court is bound by Sixth Circuit precedent. Although the *Barton* case dealt with a hot pursuit into Kentucky, the Sixth Circuit concluded "that fugitives lack standing to assert a violation of the extradition statutes since those statutes are intended to facilitate administration of interstate justice." *Wilbanks v. City of Corinth, Mississippi*, 2002 WL 1397240 (W.D. Tenn. Jan. 4, 2002). Thus, this Court is bound by the Sixth Circuit's conclusion that failure to comply with established procedures does not deprive the fugitive of any protected right.[10] *Id.*

The record before this Court clearly establishes Defendants did not comply with the Tennessee extradition procedure. Although it appears that Hamilton County authorities should have requested the governor of Tennessee to demand of the executive authority of Georgia Plaintiff's extradition in order to properly extradite Plaintiff, *see* Tenn. Code Ann. § 40-9-121, the violation of those procedures do not establish a constitutional violation. Consequently, since fugitives have no right to require government officials to comply with formal extradition procedures, the improper extradition of Plaintiff does not violate any federal rights giving rise to a cause of action under § 1983. *Barton v. Norrod*, 106 F.3d at 1295; *Martin v. Sams*, 600 F.Supp. 71, 72 (E.D. Tenn. 1984)

---

[10]    Although there is Supreme Court precedent establishing that the violation of extradition procedures does not prevent a court from trying a person who was brought within its jurisdiction in violation of the extradition laws, the Court's research did not reveal a Supreme Court case addressing whether violation of state extradition procedures states a cognizable § 1983 claim. *Frisbie v. Collins*, 342 U.S. 519, 522 (1952) ("This Court has never departed from the rule announced in *Ker v. Illinois*, 119 U.S. 436, 444 [1986] that the power of a court to try a person for crime is not impaired by the fact that he had been brought within the court's jurisdiction by reason of a 'forcible abduction.' No persuasive reasons are now presented to justify overruling this line of cases. They rest on the sound basis that due process is satisfied when one present in court is convicted of crime after having been fairly apprized of the charges against him and after a fair trial in accordance with constitutional procedural safeguards.")

(There can be

no cause of action for an alleged violation of civil rights in the course of an extradition if a fugitive

is subsequently convicted in proceedings wherein due process is afforded him).[11]

In summary, in light of Sixth Circuit precedent holding "that the constitutional and statutory

extradition provisions are not designed to protect fugitives[, r]ather, they are designed to facilitate

the administration of justice between the states[, t]hus, failure to comply with established procedures

does not deprive the fugitive of any protected right[,]" *Barton v. Norrod*, 106 F.3d at 1295, it is clear

that in this Circuit an alleged violation of formal extradition procedures does not state a cognizable

claim under § 1983. Therefore, Defendants are not liable with respect to the extradition claim.

Accordingly, Defendants' failure to abide by the UCEA does not raise a cognizable claim

under § 1983 in this circuit. Moreover, even assuming Plaintiff has demonstrated a constitutional

violation, the case law in the Sixth Circuit at the time of the extradition would not have lead a

reasonable official to believe his conduct was unlawful in the situation he confronted as Plaintiff's

right to be extradited in accordance with the UCEA was not clearly established in this circuit, thus

the Defendants would be entitled to qualified immunity. Therefore, as explained below, even if

Plaintiff did raise a Constitutional claim, the complaint would be dismissed as Plaintiff has not stated

a claim against the Defendants in their official capacity and to the extent they are sued in their

individual capacity, they are entitled to qualified immunity.

### 1. Claim Against Defendants in Their Official Capacity

---

[11] In the instant case, the record reflects that on October 1, 2007, Plaintiff waived his right to a jury trial to the charges for which he was extradited and entered a guilty plea to the theft and vandalism charges. The burglary charge was dismissed (Court File # 74-7).

Defendants contend it is unclear whether Plaintiff has sued the Hamilton County Officials in their official capacity or in their individual capacity. Since the Defendants have responded in both their official and individual capacities, it appears the Defendants are on notice they could be personally liable and, thus, the Court will construe the complaint as suing them in both capacities.

A claim against these Defendants in their official capacities is treated as being an action against Hamilton County. *Hafer v. Melo,* 502 U.S. 21, 25 (1991); *Barber v. City of Salem, Ohio,* 953 F.2d 232, 237 (6th Cir. 1992). Because Defendants have been sued in their official capacity as employees of Hamilton County, the Court must proceed as if Plaintiff has in fact sued Hamilton County, Tennessee. Therefore, in order to prevail, Plaintiff must demonstrate that the alleged violation of his constitutional rights resulted from acts representing official policy or custom adopted by Hamilton County, Tennessee. *Monell v. Dept. of Social Services of the City of New York*, 436 U.S. 658, 690-91 (1978); *Leach v. Shelby County Sheriff*, 891 F.2d 1241, 1245-46 (6th Cir. 1989), *cert. denied,* 495 U.S. 932 (1990).

In order to prevail in an action against a defendant in his official capacity, a plaintiff must show, first, that he has suffered harm because of a constitutional violation and second, that a policy or custom of the entity--in this case, Hamilton County, Tennessee--caused harm. *See Collins v. City of Harker Heights, Tex.,* 503 U.S. 115, 120 (1992). Plaintiff must identify the policy, connect the policy to the county itself, and show that the particular injury was incurred because of the execution of that policy; all of which Plaintiff has failed to do. *See Garner v. Memphis Police Dept.* 8 F.3d 358, 363-64 (6th Cir. 1993), *cert. denied,* 510 U.S. 1177 (1994) (citation omitted).

Plaintiff does not allege that the violation of his rights resulted from any policy or custom on the part of the Hamilton County. Accordingly, the Defendants are entitled to judgment as a matter

of law to the extent they are sued in their official capacities.

2.    *Claim Against Defendants in Their Individual Capacity*

Plaintiff claims that the Defendants violated his constitutional rights when they failed to follow the extradition procedures identified in the UCEA when they gained custody of him without proper extradition authority.  Assuming for the sake of discussion that Plaintiff has stated a cognizable § 1983, the Defendants are entitled to immunity.[12]

Plaintiff's factual allegations against Lt. Clark, Deputy Cox, and Deputy Siler demonstrate that these Defendants were directly involved in having him extradited without following the procedures established by the UCEA (Tenn. Code Ann. § 40-9-101 et. seq.).  In determining whether

---

[12]    In addition to being entitled to qualified immunity, Sheriff Billy Long and Chief of Corrections Jim Hart are also entitled to dismissal from this lawsuit as Plaintiff has not made a specific factually supported claim against either of these two Defendants.  Sheriff Long, as Sheriff of Hamilton County, is responsible for the operation of the Hamilton County Jail and Chief Hart is responsible for supervising the employees of the jail.  The doctrine of *respondeat superior*, however, is not recognized as a basis for liability in a § 1983 cause of action.  *Polk County v. Dodson*, 454 U.S. 312, 453 (1981).  To impose § 1983 liability on a supervisor, employer, or chief executive officer, Plaintiff must show that the supervisory official encouraged the specific act of misconduct or in some way directly participated in it.  At a minimum, Plaintiff must plead and prove the supervisory official at least implicitly authorized, approved, or knowingly acquiesced in the unconstitutional conduct of an offending subordinate.  *Bellamy v. Bradley*, 729 F.2d 416, 421 (6th Cir. 1984), *cert. denied*, 469 U.S. 845 (1984).

Plaintiff has not alleged that either of these defendants were personally involved in unconstitutional conduct.  Liability under § 1983 must be based on active unconstitutional behavior rather than a mere failure to act.  *Salehpour v. University of Tennessee*, 159 F.3d 199, 206 (6th Cir. 1998), *cert. denied*, 526 U.S. 1115 (1999).  The complaint does not contain any factual allegations suggesting that Sheriff Long or Chief Hart had any personal knowledge of Plaintiff's extradition.  There are no factual allegations that either of these defendants had any input or involvement in the extradition decision.  Consequently, Plaintiff has failed to state a claim against Sheriff Long or Chief Hart.  However, assuming for the sake of discussion that Plaintiff did state a claim against these Defendants, the Court concludes all the Defendants are entitled to immunity.

an official is entitled to qualified immunity, the Court applies the standard articulated by the Supreme Court in *Harlow v. Fitzgerald*, 457 U.S. 800 (1982):

> [G]overnment officials performing discretionary functions generally are shielded from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known.

*Id*. at 818. The Court focuses on the objective legal reasonableness of the official's action in light of clearly established law when making a determination of whether an official is entitled to qualified immunity. "[I]f officers of reasonable competence could disagree on this issue, immunity should be recognized." *Malley v. Briggs*, 475 U.S. 335, 341 (1986). In addition, the parameters of the right must be sufficiently clear. Although it is not necessary that the very action have been previously held unlawful, given the preexisting law, the lawfulness of the conduct must have been apparent. *Garvie v. Johnson*, 845 F.2d 647, 650 (6th Cir. 1988) ("We should focus on whether, at the time defendants acted, the rights asserted were clearly established by decisions of the Supreme Court or the courts of this federal circuit."). Therefore, in determining whether Defendants in the instant case are entitled to qualified immunity, this Court asks whether the law was clearly established at the time of the extradition.

When determining whether a clearly established right exists, the Court ordinarily must find binding precedent from the decisions of the Supreme Court, of this circuit, of courts within our circuit, or itself. *Ohio Civil Service Employees Ass'n v. Seiter*, 858 F.2d 1171, 1177 (6th Cir. 1988). "In an extraordinary case, it may be possible for the decisions of other courts to clearly establish a principle of law. For the decisions of other courts to provide such 'clearly established law,' these decisions must both point unmistakably to the unconstitutionality of the conduct complained of and

be so clearly foreshadowed by applicable direct authority as to leave no doubt in the mind of a reasonable officer that his conduct, if challenged on constitutional grounds, would be found wanting." *Id.*

As discussed previously in this memorandum, the Sixth Circuit has concluded that a failure to conform to extradition procedures does not state a claim under § 1983. *Barton v. Norrod*, 106 F.3d at 1293-98. In addition the *Barton* Court concluded the law was not clearly established that a fugitive has a constitutional right to proper extradition procedures and determined qualified immunity was properly granted. This Court has not found any Sixth Circuit or Supreme Court precedent clearly establishing such a right since the *Barton* decision was rendered. *Barton* is good law and even if the Court were to look outside this circuit for decisions concluding a violation of the extradition procedures states a constitutional claim, *Barton* entitles Defendants to qualified immunity because it establishes that compliance with extradition procedures is not a clearly established right in this circuit.

As the Sixth Circuit concluded in *Barton v. Norrod*, "[i]n light of *Stockwell*[13] and the cases interpreting it, it is clear that decisions outside the circuit finding that such a right exists do not so clearly foreshadow [ ] ... applicable direct authority as to leave no doubt in the mind of a reasonable officer that his conduct was unconstitutional." 106 F.3d at 1295 (quoting *Cagle v. Gilley*, 957 F.2d 1347, 1348 (6th Cir. 1992); *Johnson v. Doe*, 230 F.3d 1358 (6th Cir. 2000) (unpublished), *available in* 2000 WL 1434693 ("The Sixth Circuit recognizes that the failure to comply with formal extradition procedures will not support a claim for relief under § 1983 on behalf of the fugitive").

---

[13]     *Stockwell v. Friberg*, 272 F.2d 386 (6th Cir. 1959) (alleged violation of extradition procedures did not state a constitutional violation)

Therefore, any constitutional right to have officials comply with extradition procedures established by the UCEA was not clearly established in this circuit at the time Plaintiff was extradited. Accordingly, assuming

Plaintiff has raised a constitutional claim, Defendants are entitled to qualified immunity for their actions of extraditing Plaintiff.

**IV.     Conclusion**

Accordingly, Defendants' motion to dismiss is **GRANTED** (Court File # 68).  The complaints against Defendants will be **DISMISSED** in their entirety (Court File #s 2, 13, 14, & 19).

A final judgment will enter.


_____*/s/ R. Allan Edgar*_____
R. ALLAN EDGAR
UNITED STATES DISTRICT JUDGE